UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNEST WATSON,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

Case No.16-cv-03864-HRL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ernest Howard Watson ("Watson") appeals a final decision by the Commissioner of the Social Security Administration ("the Commissioner") that denied Watson's application for Disability Insurance Benefits under Title II of the Social Security Act. Each party consented to magistrate judge jurisdiction, Dkt. Nos. 10, 12, and moved for summary judgment, Dkt. Nos. 19, 22. For the reasons explained below, the Court denies Watson's motion and affirms the Commissioner's decision.

## I. BACKGROUND

Watson alleged disability beginning in September 2011, around the time he lost his job as a supervisor of computer help desk operations at a hospital. Dkt. Nos. 18-3 at 48-52, 18-6 at 4-7. When he applied for Title II benefits, Watson alleged that he was disabled due to: emphysema; depression; bullous emphysema/chronic obstructive pulmonary disease (COPD); memory loss resulting from the COPD; Morton's neuroma in his right foot; partially herniated discs in his back; and the stress of caring for his disabled, sight-impaired spouse. Dkt. No. 18-4 at 6-7. Watson also complained of diverticulitis, for which he previously had surgery, and sleep apnea-type symptoms. Dkt. No 18-8 at 11-12. In addition, medical records showed that Watson suffered from coronary artery disease (CAD). Dkt. No. 18-12 at 37. Watson's main complaints, though, were related to

his difficulty breathing and the memory loss that seemed to accompany it. Watson's primary physician, Dr. Lally, encouraged him to apply for disability benefits. Dkt. No. 18-12 at 19. However, Watson's pulmonologist, Dr. Marfatia, wrote that, although Watson might be a candidate for a lung transplant in the future, he "may not qualify for disability." Dkt. No. 18-11 at 80.

Watson applied for Title II benefits in July 2012. Dkt. No. 18-6 at 4-7. After the Commissioner denied Watson's claim both initially and upon reconsideration, Dkt. No. 18-4 at 14, 30, Watson requested a hearing before an Administrative Law Judge, Dkt. No. 18-5 at 15. A hearing was conducted in October 2014 before ALJ Betty Roberts Barbeito ("the ALJ"). Dkt. No. 18-3 at 32. The ALJ issued a written decision in January 2015 that denied Watson's claim. *Id.* at 15-25.

In her written decision, the ALJ considered Watson's claim of disability with the five-step, sequential evaluation approach that is required by the Commissioner's regulations. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Watson had not performed substantial gainful activity since the alleged onset date of his disability. Dkt. No. 18-3 at 17. At step two, the ALJ identified the impairments that qualified as "severe" under the regulations. The ALJ found that Watson's emphysema, COPD, and CAD qualified as severe. She concluded that Watson's other alleged impairments, including Watson's memory issues and foot pains, were not severe. *Id.* at 17-18. At step three, the ALJ determined that none of Watson's severe impairments or combinations thereof met or was medically equal to the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Dkt. No. 18-3 at 20. At step four, the ALJ found that despite his emphysema, COPD and CAD, Watson had the residual functional capacity ("RFC") to perform sedentary work, with some limitations regarding walking, standing, and avoiding environmental irritants. *Id.* at 21-26. The ALJ concluded that Watson was capable of performing his past relevant work, citing to the entry in the Dictionary of Occupational Titles ("DOT") for "helpdesk supervisor/operations (DOT # 169.167-082)."[1] *Id*. at 26. Having concluded that Watson could

---

[1] The cited entry is actually titled "Manager, Computer Operations." Department of Labor, *Dictionary of Occupational Titles* 169.167-082, 4th ed. 1991, *available at* Westlaw 1991 WL 647441.

2

perform his past relevant work, and was therefore not disabled, the ALJ did not proceed to step five of the sequential evaluation.

The Appeals Council denied Watson's request for review, *id.* at 2-4, prompting Watson to seek judicial review in this Court.

## II. LEGAL STANDARD

This Court has jurisdiction to review the Commissioner's decision to deny benefits, but must affirm if the Commissioner's decision applies the correct legal standards and is supported by substantial evidence. *See* 42 USC 405(g) ("findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is "more than a mere scintilla, but may be less than a preponderance." *Molina*, 674 F.3d. at 1110-11 (internal citations and quotation marks omitted). A court must consider the record as a whole when assessing whether the Commissioner's decision is supported by substantial evidence. *See Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations and quotation marks omitted).

## III. DISCUSSION

Watson argues that the ALJ: (1) improperly failed to consult a vocational expert; (2) failed to properly weigh the medical evidence, especially the opinion of Watson's treating physician, Dr. Lally; and (3) improperly discounted the testimony of both Watson and his wife. Dkt. No. 19 at 8-11.

Watson argues, first, that the ALJ should have consulted a vocational expert to determine whether Watson can perform his past relevant work. *Id.* at 8. Watson asserts that it was reversible error for the ALJ to reach that conclusion without guidance from a vocational expert, and without "citation to any authority, including the Dictionary of Occupational Titles." *Id.*

To determine whether a claimant can perform his past work, an ALJ may consult specialists, such as a vocational expert, or resources, such as the DOT. 20 C.F.R. §

3

1 404.1560(b)(2). A vocational expert may be especially helpful at step five of the sequential evaluation approach, but vocational expert testimony is not necessary if the ALJ determines that the claimant can perform his past relevant work. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (affirming denial of benefits where ALJ failed to call vocational expert but determined that claimant could perform past relevant work). Here, Watson is incorrect to suggest that the ALJ was obligated to consult a vocational expert. *See id.* Moreover, the ALJ did cite to the DOT, and the RFC required for a "Manager, Computer Operations" matches the sedentary RFC that the ALJ assigned to Watson. Dkt. No. 18-3 at 21-26; Department of Labor, Dictionary of Occupational Titles 169.167-082, 4th ed. 1991, *available at* Westlaw 1991 WL 647441. The Court rejects Watson's argument that the ALJ erred in this regard.

Second, Watson argues that the ALJ failed to properly weigh the medical evidence. In particular, Watson complains that the ALJ improperly discounted the opinion of Dr. Lally as to Watson's COPD. Dkt. No. 19, 8-10. Dr. Lally, a gastroenterologist and Watson's primary physician for approximately 30 years, encouraged Watson to apply for disability benefits, and concluded that Watson's physical and emotional limitations would prevent him from tolerating even a low-stress job. Dkt. No. 18-12 at 19, 60-64. Watson also alleges that the ALJ failed to consider evidence regarding Watson's foot problems. Dkt. No. 19 at 9.

An ALJ must give more weight to the opinions of treating doctors, i.e. doctors who provide medical treatment or evaluation and who have an ongoing treatment relationship with the claimant, than to the opinions of doctors who have a less extensive relationship with the claimant. *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (noting that of the three sources of medical opinions, the opinions of non-examining doctors are entitled to the least weight, examining doctors' opinions are entitled to more weight, and treating doctors' opinions are entitled to the most weight). Indeed, an ALJ must give a treating doctor's opinion controlling weight if it is well-supported by substantial evidence and is not inconsistent with other substantial evidence in the record. *Edlund*, 253 F.3d at 1157; 20 C.F.R. § 404.1527(c)(2); SSR 96-2p.

Even if the treating doctor's opinion is contradicted by other evidence, an ALJ may reject

4

the opinion of a treating doctor only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Edlund*, 253 F.3d at 1157. When discounting the opinion of a treating doctor, an ALJ must weigh factors such as the length of the treatment relationship, the doctor's specialization, and whether the treating doctor's opinion is supported by objective medical tests and is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c). For example, an ALJ may discount a treating doctor's opinion when it is based on "[the claimant's] subjective complaints[,] without objective evidence." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ adequately justified the rejection of Dr. Lally's opinion. Despite the longstanding treatment relationship between Watson and Dr. Lally, the ALJ discounted Dr. Lally's opinion as to Watson's COPD because Dr. Lally is a gastroenterologist, not a pulmonologist, and the issue was therefore outside of his area of expertise. Dkt. No. 18-3 at 25. True, the ALJ placed "great weight" on the opinion of Dr. Krishnamurthi, who is not a pulmonologist, either. *Id.* at 26. Yet the ALJ emphasized that Dr. Lally's opinion appeared to be based in large part on Watson's subjective complaints, *see Batson*, 359 F.3d at 1195, and that the objective evidence on which Dr. Krishnamurthi and others based their opinions was not consistent with a finding of disability. Dkt. No. 18-3 at 25. For example, the ALJ cited to Dr. Marfatia's October 2011 observation that Watson's FEV1, a measure of lung health, was 82%, which is within the range of normal results. *Id.* at 22. A test one month later showed a slightly lower FEV1 value (73%), Dkt. Nos. 18-3 at 22, 18-20 at 12, but by January 2013, the score had risen to 77%, Dkt. Nos. 18-3 at 23, 18-8 at 15. The doctor who administered the January 2013 test described the results as indicating "mild or borderline obstructive disease." Dkt. Nos. 18-3 at 23, 18-8 at 15. The ALJ noted that Watson was admitted to an emergency room in March 2013 after complaining of dyspnea (breathlessness). Dkt. Nos. 18-3 at 23. However, a stress electrocardiogram test performed the same month showed that although Watson suffered from severe dyspnea at peak exercise, his tolerance for exercise was "good," and he experienced a "fast recovery post-exercise." Dkt. Nos. 18-3 at 23, 18-17 at 16.

The ALJ also found that Dr. Lally's opinion was inconsistent with Watson's participation in recreational activities. The ALJ put special emphasis on the fact that Watson "reported that he

5

was *still able to play roller hockey*" in March 2013, and that Watson hurt his foot in August 2012 after "*walking* 18 holes of golf[.]" *Id.* at 24

In sum, this Court concludes that the ALJ's discounting of Dr. Lally's opinion was not in error.[2]

As for Watson's foot problems, the Court finds that the ALJ's conclusions were supported by substantial evidence. Watson's podiatrist, Dr. Todd, described Watson's plantar fasciitis as "mild" in September 2012. Dkt. No. 18-16 at 90. Dr. Gable observed a few months later that Watson could walk without difficulty. Dkt. No. 18-8 at 13.

Third, and finally, Watson argues that the ALJ improperly discounted the testimony of both Watson and his wife. Dkt. No. 19 at 9-11. Watson testified that he experienced severe limitations due to COPD. Although his prior work required him to be on his feet regularly, Watson claimed at the hearing that he could walk for only four or five minutes before needing to rest. Dkt. No. 18-3 at 60-61. Watson reported that he could do "very light" household chores, *id.* at 58, and noted on a questionnaire that he was still able to drive and do some household shopping, Dkt. No. 18-7 at 32. Although Watson's treating doctors generally described him as compliant with his prescriptions, *see, e.g.*, Dkt. No. 18-9 at 28, Watson reported to examining physician Dr. Gable that he did not use oxygen at night, contrary to his doctors' orders, Dkt. No. 18-8 at 11. Watson also acknowledged that he received state unemployment benefits in 2011, after he left his most recent job. Dkt. No. 18-3 at 64-65.

A claimant's statement as to pain or other symptoms cannot be conclusive evidence of disability; a claimant's testimony must be backed up by medical evidence and must be consistent with the rest of the record. 42 U.S.C § 423; 20 C.F.R. § 404.1529(a). To assess the claimant's testimony regarding the intensity and persistence of symptoms, an ALJ must engage in a two-step process:

---

[2] The ALJ's decision includes minimal discussion of Watson's alleged memory loss, despite the problem being prominent in the record and observed by medical and lay sources. *See* Dkt. Nos. 18-7 at 37, 18-12 at 79-80. Nevertheless, Watson offered no real evidence to explain or corroborate the alleged link between his COPD and memory loss, and the ALJ's ultimate conclusion that Watson's affective disorder was not severe was supported by substantial evidence.

6

> "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal citations and quotation marks omitted); *see also* SSR 96-7, *superseded by* 16-3p. "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Further, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed." *Id.* at 1016. However, an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," is an example of clear and convincing evidence that discredits a claimant's testimony. *See Molina*, 674 F.3d at 1112-13 (citation and quotation marks omitted). Finally, a claimant's collection of unemployment benefits may be a reason to discount the claimant's testimony, but only if the record shows the claimant held himself out as available for full-time, as opposed to part-time, work. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008)

Here, the ALJ's findings as to Watson's testimony were supported by clear and convincing evidence. As noted above, medical tests of Watson's lung function, and his continued participation in recreational activities, were not consistent with his claimed limitations. Watson's self-reported non-compliance with his oxygen regimen adds further weight to the ALJ's conclusion. *See Molina,* 674 F.3d at 1112–13. The record does not indicate whether Watson held himself out as available for full-time work when he collected unemployment benefits, so his receipt of those benefits is not entitled to any special weight. *See Carmickle*, 533 F.3d at 1161-62. Nevertheless, the Court concludes that the ALJ did not err in discounting Watson's testimony.

Watson also argues that the ALJ improperly discounted the testimony of his wife, Margaret Carew-Watson. Mrs. Carew-Watson's testimony largely echoed her husband's. She

1   described Watson's daily activities as being severely limited by breathlessness and difficulty with
2   memory and concentration. Dkt. No. 18-7 at 37-44.

3   "In determining whether a claimant is disabled, an ALJ must consider lay witness
4   testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d
5   1050, 1053 (9th Cir. 2006) (citation omitted). An ALJ may discount lay testimony only if she
6   "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (citation
7   omitted). "[T]he fact that a lay witness is a family member cannot be a ground for rejecting his or
8   her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of
9   particular value[.]" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir.
10  1999) (citation omitted). However, an ALJ may discount a lay witness' testimony where the
11  witness' close relationship to the claimant might unduly influence the testimony. *See Greger v.
12  Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (affirming ALJ's discounting of testimony from
13  claimant's former girlfriend). Finally, medical evidence that contradicts a lay witnesses'
14  testimony is also a germane reason to discredit the testimony. *See Bayliss v. Barnhart*, 427 F.3d
15  1211, 1218 (9th Cir. 2005).

16  Here, the ALJ addressed Mrs. Carew-Watson's testimony, and discounted it for valid
17  reasons. While noting that "affection for the claimaint" might "color[]" the testimony, the ALJ
18  emphasized that Mrs. Carew-Watson's statements were not consistent with the medical evidence.
19  Dkt. No. 18-3 at 24-25. These were both germane to Mrs. Carew-Watson's reliability as a
20  witness, so the ALJ's finding on this issue was not in error. *See Greger*, 464 F.3d at 972; *Bayliss*,
21  427 F.3d at 1218.

## IV.    CONCLUSION

For the reasons explained above, the Court concludes that the ALJ did not err in failing to consult a vocational expert, in assigning less weight to the opinion of Dr. Lally, or in discounting the testimony of both Watson and his wife. Further, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole. Watson's motion for summary judgment, therefore, is denied, and the Commissioner's cross-motion for summary judgment is granted.

8

**IT IS SO ORDERED.**

Dated: 9/25/2017

HOWARD R. LLOYD
United States Magistrate Judge